UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS, WESTERN DIVISION

_____

Katherine Williams; and
Potted Fox Studios, Inc. d/b/a Inner Beast Leather

        Plaintiffs

v.                                                        Complaint
                                                                   Jury Trial Demanded

Christopher Goguen,
d/b/a Silverleaf Leather

        Defendant

_____

## Introduction

Plaintiff Williams is a designer and leatherworker who was previously in a business and romantic relationship with Defendant Goguen, who is also a leatherworker. Williams created a logo for "Inner Beast Leather" and registered the copyright interest in that image. This Complaint concerns Defendant's use of Plaintiff's artwork and business name without permission, particularly in the context of sales of leather goods at Renaissance and Medieval themed festivals.

1. This is a complaint for copyright infringement, 17 U.S.C. § 501; trademark infringement under the Lanham Act § 43, 15 U.S.C. 1125; violations of the Massachusetts Consumer Protection Act M.G.L. c. 93A; and unjust enrichment.

2. This court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338.

## The Parties

3. Plaintiff Katherine Williams ("Williams") is an individual residing in Marlboro, Vermont.

4. Williams is the author and owner of a 2-dimensional original artwork first published in 2011, entitled "The Inner Beast Leather Logo" ("Logo")(Exhibit 1).

5. Williams is owner of a federal copyright registration, number VA 2-284-818 for the Logo, registered with the Copyright Office on December 28, 2021 ("Copyright Registration") (Exhibit 2).

6. Plaintiff Potted Fox Studios, Inc., is a Vermont corporation of which Katherine Williams is the president that does business as "Inner Beast Leather."

7. Plaintiffs are in the business of designing, crafting, manufacturing, distributing, and selling leather goods, specifically leather armor, belts, bracers, clothing and accessories at markets that include: Renaissance and Medieval themed festival events, Historical Reenactment Events, Farmer's Markets, Art Shows, and genre-fiction conventions.

8. Defendant Christopher Goguen ("Goguen") is an individual who owns residential real estate at 48 Royal Street, Agawam, Hampden County, Massachusetts, 01001.

9. Goguen's ownership of 48 Royal Street, Agawam is evidenced by a deed recorded in the Hampden County Registry of Deeds, Book 13778, Page 24. (Exhibit 3).

10. Goguen has operated a sole proprietorship under the name Silverleaf Leather that sells leather goods since some time before 2009. Goguen makes hard leather armor and accessories.

11. A certified letter addressed to Christopher Goguen, Silverleaf Leather, 61 Bettys Path, West Yarmouth, MA 02673, was acknowledged as delivered on November 22, 2022 ("Demand Letter"). (Exhibit 4).

12. Defendant Goguen's mother Sharon Goguen died intestate on August 26, 2022, after which a Petition for Formal Probate for Sharon Goguen was filed in the Barnstable Probate and Family Court on December 9, 2022, accompanied by a declaration of Surviving Spouse, Children, Heirs at Law, in which Goguen represented, "under the pains and penalties of perjury" that he has an address of 48 Royal Street, Agawam, MA 01001, and is one of two children of Sharon Goguen. (Exhibit 5).

13. Pursuant to a deed recorded in the Barnstable Registry of Deeds at Book 7330, Page 280, Sharon L. Goguen acquired an interest in a certain property in Yarmouth, Massachusetts. (Exhibit 6).

14. The address of this Yarmouth property is 61 Bettys Path, West Yarmouth, Massachusetts 02673.

15. Venue is proper pursuant to 28 USC § 1391(b)(1) because the defendant resides in, and does business in, Massachusetts.

## Plaintiff's Protected Work

16. Plaintiff's Copyright Registration documents that the Logo was first published by Williams on February 1, 2011. (Exhibit 2).

17. Plaintiff's Logo is the original work of Williams. (Exhibit 2).

18. Plaintiff's Logo consists of the text "Inner Beast Leather" surrounding an ink-blot style paw print that has multiple ink-drop accents and contains human hand

3

imagery (thumb facing to the left) of inverted colors within the palm of the paw. (Exhibit 1).

19. Plaintiff's Logo was used with permission of Williams by the artist collective known as "Inner Beast Leather," which was organized in 2011 to share the burden amongst several artists of overhead costs of selling leather goods at various markets across the United States ("Inner Beast Leather").

20. Inner Beast Leather was an informal association, where if an artist wished to vend outside of the umbrella of the collective, they were free to do so as their own separate entity. Plaintiffs' are associates of Inner Beast Leather.

21. Since authorization to Inner Beast Leather to use the Logo was granted by the Plaintiff in 2011, the Logo has been publicly displayed at multiple sales events over multiple years, including:

   a. The New York Renaissance Faire (600 Route 17A, Tuxedo, NY 10987),
   b. King Richard's Faire (235 Main St, Carver, MA 02330),
   c. Brevard Renaissance Festival (Wickham Park, 2500 Parkway Dr, Melbourne, FL 32935),
   d. Florida Renaissance Festival (401 Powerline Rd, Deerfield Beach, FL 33442),
   e. Louisiana Renaissance Festival (46468 River Road, Hammond, LA 70401).
   f. Medieval Faire of Norman (1700 Asp Ave., Norman, OK 73072),
   g. Renaissance Pleasure Faire of Southern California (15501 Arrow Hwy, Baldwin Park, CA 91706), and

      h.  Scarborough Renaissance Festival (2511 FM 66, Waxahachie, TX 75167).

22. Since authorization to Inner Beast Leather to use the Logo was granted by the Plaintiff in 2011, the Logo has been used for marketing for Inner Beast Leather artists on social media and retail sites, including:

    a.  Facebook (https://www.facebook.com/innerbeastleather),

    b.  Instagram (https://www.instagram.com/innerbeastleather/),

    c.  TikTok (https://www.tiktok.com/@innerbeastleather), and

    d.  Etsy (https://www.etsy.com/nl/shop/InnerBeastLeatherArt).

23. Since authorization to Inner Beast Leather to use the Logo was granted by the Plaintiff in 2011, Defendant has pursued independent vending opportunities as his d/b/a 'Silverleaf Leather' at the following locations:

    a.  2012: The New York Renaissance Faire (600 Route 17A, Tuxedo, NY 10987),

    b.  2015: The New Hampshire Renaissance Faire (Martin Rd, Fremont, NH 03044), and

    c.  2016: The New Hampshire Renaissance Faire (Martin Rd, Fremont, NH 03044).

### Defendant's Infringing Work

24. Defendant, or Defendant's agents, made and used an unauthorized derivative work copying the same ink blot paw-print with internal human hand imagery of Plaintiffs' Logo, with the following minor changes: the multiple ink-drop accents have been removed and the rightmost 'toe' of the paw has been flipped, as in a mirror image ("Infringing Work"). (Exhibit 7).

25. Defendant's Infringing Work is an unauthorized derivative of Plaintiff's Logo.

26. Defendant's Infringing Work demonstrates Defendant's willful and knowing intent to copy, as it demonstrates Defendant's misguided belief that altering a small portion of Plaintiff's Logo would somehow make Defendant's work non-infringing.

27. Defendant's Infringing Work also copies Plaintiff's Logo layout in that the word "Leather" appears underneath the artwork, and the company name appears above the artwork.

28. Defendant has displayed the Infringing Work in association with his business Silverleaf Leather in two ways: (1) utilizing a banner emblazoned with the Infringing Work ("Physical Banner")(Exhibit 8) in brick and mortar retail locations, and (2) by using a digital image as a profile image on multiple social media sites ("Profile Image")(Exhibit 9).

29. Defendant has publicly displayed the Physical Banner at retail sales events, explained in further detail below, including but not limited to:

    a. Scarborough Renaissance Festival (2511 FM 66, Waxahachie, TX 75167), approximately April 9, 2022 to May 30, 2022; and

    b. Brevard Renaissance Festival (Wickham Park, 2500 Parkway Dr, Melbourne, FL 32935), approximately January 7, 2023 to February 5, 2023; and

    c. Florida Renaissance Festival (401 Poweriine Rd, Deerfield Beach, FL 33442), approximately February 4, 2023 to March 26, 2023; and

6

    d. King Richard's Faire (235 Main Street, Carver, MA 02330),

       approximately September 3, 2022 to October 23, 2022.

30. Defendant has utilized the Profile Image for marketing Silverleaf leather goods on the social media and retail sites, including but not limited to:

    a. Facebook (https://www.facebook.com/SilverleafLeathers),

    b. Instagram (https://www.instagram.com/silverleafleather/),

    c. TikTok (https://www.tiktok.com/@silverleafleather), and

    d. Etsy (https://www.etsy.com/shop/SilverleafLeathers).

31. Upon information and belief, Defendant also publicly displayed the Physical Banner when making retail sales at events hosted by the Society for Creative Anachronism called 'Hastilude of the Autumnal Equinox' on or about September 24, 2022 in Enfield, CT.

### Trade Name: Inner Beast Leather

32. As one of the artists of Inner Beast Leather, the Plaintiffs sell their leather goods worldwide to consumers in a variety of ways: on-site, directly to consumers at retail locations within the United States, through custom commission orders, and through on-line portals.

33. Plaintiffs began use of the trade name "INNER BEAST LEATHER" in 2011 at the Florida Renaissance Festival.

34. At that time, the artists working together under the Inner Beast Leather trade name included: Plaintiffs, Defendant, and Mr. Karl Otto.

35. In or around 2011, Plaintiff Williams and Defendant Goguen began a romantic relationship.

36. In or around 2013, the artists of Inner Beast Leather pooled their resources in order to build a flagship, brick-and-mortar location at the New York Renaissance Faire.

37. Over subsequent years, additional artists were invited to also do business under the Inner Beast Leather trade name in order to expand the selections available to customers. These artists included: Marlene McConnel (d/b/a The Roving Frog), Lloyd Kirby Wynne (d/b/a JDLTHRWKS), Tyler Gordon, and Jan Neurdenburg.

38. With the combined financial power of these artists, Inner Beast Leather expanded its retail locations to include New York, Massachusetts, Florida, and Oklahoma. As retail locations for Inner Beast Leather artisans stretched across the continental United States, various artists were designated as the Lead artist at a specific location as needed to fulfill contract obligations with the hosting festivals that an 'Owner' be present.

39. The Inner Beast Leather artists built both a fan following and artist acclaim since its inception, being granted such awards as: 'Best At Faire' for the Masterwork Artists Collection (New York Renaissance Faire) in 2015 and 2017.

40. From 2011 until December 31, 2021, the artists of Inner Beast Leather used the Inner Beast Leather trade name for marketing purposes when they appeared together at retail locations, but the individual purchases of customers were checked out at point of sale locations to individual artists under their respective trade names.

41. Specifically, while Plaintiffs' and Defendant's goods were sold within the same retail channel, the artists themselves remained separate entities and never commingled payments received for the sale of goods.

42. At no time has there existed a written Partnership Agreement between any of the artists working under the "Inner Beast Leather" trade name.

43. All Inner Beast Leather artists were granted oral permission to be associated with Plaintiff's Logo when retail sales were combined under one roof, but an artist wishing to sell in a venue that was not combined was required to use their own logo in physical and digital spaces and on social media.

## Defendant's Exit from the Artist Collective

44. In September of 2021, Plaintiff Williams and Defendant Goguen ceased to be involved in a personal, intimate relationship.

45. At the time, Plaintiff was operating the flagship location at the New York Renaissance Faire and Defendant was operating a second brick-and-mortar location at King Richard's Faire in Massachusetts.

46. Given that both parties goods were being sold under the Inner Beast Leather trade name and Logo in both locations, the parties agreed that it would be prudent to put into writing the business operating procedures of Inner Beast Leather that had been in effect and developing since 2011.

47. It was agreed between the parties that a written Partnership Agreement would be negotiated, and if an agreement could be reached by December 31, 2021, Defendant would continue to have his goods sold under the Inner Beast Leather trade name and Logo.

48. If an agreement was not reached by that time, Defendant's goods would not be sold under the Inner Beast Leather trade name and would not be vended at Inner Beast Leather locations.

49. On September 23, 2021, a Statement of Operation was signed to this effect. (Exhibit 10).

50. On November 1, 2021, Defendant seized control of the "Inner Beast Leather" Facebook Page, removing multiple artists' ability to access the platform and respond to customer inquiries/requests.

51. On or about December 4, 2021, during a phone call with Plaintiffs' representative, Defendant demanded terms for the Partnership Agreement which were fatal to negotiations.

52. On December 5, 2021, Plaintiffs requested by email that Defendant either return control of the "Inner Beast Leather" Facebook Page or change the name to Defendant's "Silverleaf Leather" business, as it was confusing customers. (Exhibit 18).

53. Shortly after this request, Defendant changed the Facebook page name from "Inner Beast Leather" to "Silverleaf Leather."

54. On December 21, 2021, Defendant made a social media post publicly declaring that he was no longer a member of the artist collective of "Inner Beast Leather": "Due to irreconcilable differences with the other owner of Inner Beast Leather I will no longer be working under that business name going forward. I will be going back to my original business name of Silverleaf Leather." (Exhibit 11).

55. Defendant furthermore stated that it was his intention to continue to vend at the following Renaissance Festivals: Brevard Renaissance Faire, Florida Renaissance Festival, New York Renaissance Faire, and King Richard's Faire. (Exhibit 11).

56. Since this date, Defendant has continued to utilize the trade name "Inner Beast Leather" without permission.

57. As of December 31, 2021, no Partnership Agreement had been reached.

58. On or before January 1, 2022, Defendant Goguen (d/b/a Silverleaf Leather) was not a member of the artist collective known as "Inner Beast Leather."

59. Accordingly, Defendant's Silverleaf Leather products were no longer allowed to be associated with the trade name "Inner Beast Leather" nor the Logo.

60. Since January 1, 2022, Defendant has not requested a license from Plaintiffs to create, utilize, copy, or display Plaintiff's Logo or any derivative work.

61. Since January 1, 2022, Plaintiff Williams has not granted Defendant a license or any permission to create, utilize, copy, or display Plaintiff's Logo or to make a derivative work based on Plaintiff's Logo.

### **Florida Infringements**

62. Plaintiff was present at the Florida Renaissance Festival doing business under the trade name Inner Beast Leather from on or around February 5, 2022 – March 20, 2022.

63. During that time, Plaintiff and the other Inner Beast Leather artists present were being informed by multiple patrons that they "had bought something at Plaintiffs' 'other booth.'"

64. As a result, Plaintiff confirmed that Defendant had created the Physical Banner and was publicly displaying it at the Festival, causing widespread confusion among patrons and loss of business to Inner Beast Leather artists.

65. Shortly thereafter, Plaintiffs and the other artists also discovered that Defendant was using the Profile Image on various social media sites, causing further market confusion.

66. Due to the degree of acrimony involved in the personal breakup between Plaintiff Williams and Defendant Goguen, the artists of Inner Beast Leather did not feel safe confronting Goguen in person at the time.

67. Plaintiff engaged an attorney to serve Digital Millenium Copyright Act ("DMCA") take down notices to various social media platforms Plaintiff was aware that Defendant was using at the time. For example, on or around April 4, 2022, a take down notice was submitted to Facebook concerning approximately forty infringing images. (Exhibit 19).

68. Accordingly, Defendant was served with notice that the Physical Banner and Profile Logo were unauthorized derivative works in violation of Plaintiff Williams' copyright protected artwork.

69. Notwithstanding these notices, Defendant continued to use the Infringing Work.

70. Over fifty instances of infringement have been reported to social media platforms by Plaintiff and in all those instances Plaintiff has requested removal of the Infringing Work via DMCA take down notices.

**Massachusetts Infringements**

71. On or around September 6, 2022, Defendant published an announcement that it was vending at King Richard's Faire in Carver, Massachusetts. That announcement displayed the Infringing Work, in the form of a photograph showing two iterations of the Physical Banner displayed at the physical retail location. (Exhibits 16–17).

72. The King Richard's Faire ran from September 3, 2022 to October 23, 2022.

**Infringement Since the Service of Plaintiff's Cease and Desist**

73. Plaintiff, through counsel, served Defendant with a "Cease and Desist" letter dated November 16, 2022, outlining Plaintiff's rights, Defendants infringements, and the fact that any further infringement of Plaintiff's Logo would necessitate litigation (Exhibit 4).

74. Defendant's notice of the Demand Letter is evidenced by the signed certified mail receipt dated November 22, 2022. (Exhibit 12).

75. Since receiving the Demand Letter, Defendant or their agents or their affiliates have continued to infringe Plaintiff's Logo by reproduction, distribution, sale, use, or public display of the Physical Banner at brick-and-mortar retail locations and the Profile Image on various social media platforms, all without authorization from Plaintiff.

76. With respect to in-person retail locations, Defendant actions in utilizing the Infringing Work have caused Plaintiffs damage to their business and reputation.

77. Plaintiffs sold merchandise at the Louisiana Renaissance Festival (on or around November 5, 2022 – December 11, 2022), only to encounter an escalation in the severity of the issue of Defendant's use of the Infringing Work.

13

78. During this show season, Plaintiff Williams and other Inner Beast Leather artists were verbally assaulted by a patron who stated that he had not expected Inner Beast Leather to be at Louisiana Renaissance Festival at all and alleged that "they were not the real Inner Beast Leather."

79. Specifically, the patron impugned the quality of their leather goods presented for sale, accused Plaintiff and the other artists of being "a fake Inner Beast Leather," and loudly accused the artists of Inner Beast Leather of fraud.

80. These loud and aggressive accusations were all made during business hours for the Festival and in front of other patrons, damaging Plaintiffs' business and confirming the far-reaching, disastrous effects of Defendants' use of the Infringing Work for its own business purposes.

81. Shortly thereafter, a person by the name of Doyle McGee posted to Defendant's Silverleaf Leather Facebook page to state that he was very disappointed that "nothing you show on your face book page was there." Defendant then stated he had not been present at the Louisiana Renaissance Festival "for a few years," though when Mr. McGee asked if Defendant had "swapped names from Inner Beast Leather," Defendant declined to comment or clarify that he was no longer associated with Inner Beast Leather. (Exhibit 13).

82. Defendant also used the Infringing Work at the Brevard Renaissance Festival (on or around January 7, 2023 – February 5, 2023), which Plaintiffs and Inner Beast Leather decided not to attend this year for personal reasons.

83. Defendant publicly promoted its use of the Infringing Work, posting on social media an image of the Physical Banner in use. (Exhibit 14).

84. Defendants' infringements continued at the Florida Renaissance Festival (on or around February 4, 2023 – March 26, 2023).

85. Despite the Cease and Desist letter served on the Defendant, Defendant has continued to use Plaintiff William's copyright-protected Logo for Defendant's own personal benefit and financial gain, suggesting these infringements will continue unless the Court orders Defendant to stop.

86. Defendant continues to hold exclusive access to the Inner Beast Leather business page on the social media site: Etsy, which redirects all traffic for https://www.etsy.com/shop/**InnerBeastLeather** to the sale and purchase of items branded as 'Silverleaf Leather' and accessible under URL: https://www.etsy.com/shop/**SilverleafLeathers.**

87. Defendant continued to use the infringing Profile Image on Etsy, ensuring this confusion. (Exhibit 15).

88. At this time, Inner Beast Leather has needed to recreate an entirely new Etsy page in order to maintain its ability to properly process online orders as it did before Defendant's removal of himself from the Artists Collective of Inner Beast Leather.

89. Defendant continues to perpetuate association of the Infringing Work with his Silverleaf Leather brand on TikTok.

90. Since January 1, 2022, the brand confusion caused by Defendants' use of the unauthorized derivative work in retail settings has resulted in lost sales, lost customers, and associated monetary damages.

91. Plaintiff was contacted about exhibiting at the Scarborough Renaissance Festival, but within a week was told the space was no longer available. Plaintiff later learned that the space was filled by Defendant.

## FIRST CAUSE OF ACTION

### *Copyright Infringement*

92. Plaintiff reaffirms and realleges paragraphs 1 through 91.

93. Defendant had access to Plaintiff's Logo during their time of sharing retail space.

94. Defendant's creation, manufacture, distribution, sale, and display of Defendant's Infringing Work that is substantially similar to Plaintiff's Logo violated the rights conferred to Plaintiffs pursuant to the Copyright Act, 17 USC §§ 101 *et seq.*, in that such merchandise incorporates the copyrightable elements of Plaintiff's federally registered work.

95. Defendant's infringements of Plaintiff's federally registered copyright were willful.

96. Defendant is therefore liable to Plaintiff for actual damages in the form of Defendant's profits or Plaintiff's lost profits, foregone licensing fees and/or statutory damages in an amount not to exceed $150,000 for each act of infringement, plus costs and fees, including attorney's fees.

## SECOND CAUSE OF ACTION

### *Trademark Infringement*

97. Plaintiff reaffirms and realleges paragraphs 1 through 96.

98. There is a high degree of similarity between Plaintiff's Logo and the Infringing Work.

99. Plaintiff's Logo has acquired distinctiveness

100. Plaintiff's Logo is lawfully used exclusively by Plaintiff and Plaintiff's licensees.

101. Defendant's creation, manufacture, distribution, sale, and display of Defendant's Infringing Work that is substantially similar to Plaintiff's Logo violated the rights conferred to Plaintiffs pursuant to the Lanham Act § 43, 15 U.S.C. § 1125.

102. Defendant is liable to Plaintiffs for disgorgement of Defendant's profits and/or Plaintiffs' lost profits, plus costs and attorney's fees.

### THIRD CAUSE OF ACTION

*Massachusetts Consumer Protection Act (c. 93A § 11)*

103. Plaintiff reaffirms and realleges paragraphs 1 through 102.

104. Defendant is engaged in trade or commerce in Massachusetts.

105. Defendant's actions, omissions, and/or misrepresentations in using Plaintiff's Logo were unfair or deceptive.

106. Defendant's actions, omissions and misrepresentations alleged herein were willful and knowing.

107. If not for Defendant's actions, omissions and misrepresentations alleged herein, Plaintiff would not have incurred the damages alleged herein.

### FOURTH CAUSE OF ACTION

*Unjust Enrichment*

108. Plaintiff reaffirms and realleges paragraphs 1 through 107.

109. Defendant exploited images of Plaintiff's Logo in connection with the sale of merchandise and Defendant derived substantial profits therefrom.

110. Defendant so exploited images of Plaintiff's Logo without the authorization or approval of Plaintiff, and without any payment.

111. It would be inequitable for Defendant to retain all of the proceeds derived from the exploitation of Plaintiff's Logo.

112. This court should impose an equitable or quasi-contract between Plaintiff and Defendant such that Plaintiffs are entitled to a reasonable licensing fee and/or share of the proceeds realized by Defendants from the exploitation of Plaintiff's Logo.

WHEREFORE, Plaintiff respectfully requests that this honorable Court:

1. render judgment for Plaintiff;
2. award actual or statutory damages as proven at trial or upon motion;
3. award Plaintiffs' attorneys' fees and costs;
4. order that Defendants cease and desist from all use of the Infringing Work;
5. order that Defendants destroy all copies of physical objects that use the Infringing Work;
6. order that Defendants remove all instances of the Infringing Work from the Internet;
7. and award such further and other relief as deemed proper.

Northampton, Massachusetts
May, 17, 2023

_____
Peter Irvine
Mass. BBO #656538
Attorney for Plaintiffs
9 ½ Market Street, Suite 3A
Northampton, MA 01060
(413) 587-0008